If it may please the court, attorney for the petitioner Liu Zifeng, our matter concerns a credibility finding that was affirmed by the board. And as per my brief, our argument is that the petitioner was completely credible and very consistent regarding his own personal claims. The board, in fact, does not identify a single discrepancy with his own claim, with what happened in his detention and the harm he suffered. Their entire focus is on his father's detention, and the board finds that the petitioner did not provide enough details for that, which normally would be... Or at least evidence in support of his asylum application, right? In the sense that he did testify about it and direct, correct your honor, he did. And maybe this is where you're going with it, but it did seem like he was a little sparse on details. Can you explain why that might have been? It was sparse in detail, and normally that would be a completely understandable point on the part of the board. However, he was not in China when his father was detained. It was not part of his original asylum application. It was something that his mother told him happened subsequently after he was already in the United States. And not only that, but he testified in court that the mother would not tell him what happened, that he was 18 years old at the time, and the mother did not want to worry him. And so she wouldn't elaborate. So the judge determined that this is not plausible, and I would hope that the panel finds that this finding is based on speculation. The applicant, the petitioner, did not tell his mother what to write in his letter. He cannot force her to provide him details about what happened to his father. We don't know why the father didn't provide him information again. It was a young petitioner who went along with what his parents told him. Am I right that you're arguing that to the extent that agency relied on the lack of detail in the mother's letter or the fact that the father didn't write a letter, that there needed to be better notice of those gaps? Correct, Your Honor. He did provide evidence. And so to the degree that the board relied on this for their adverse credibility finding, in saying that he didn't provide all the corroborated evidence, well, it has to be reasonably available. And we did provide a letter from the mother. Then the judge finds, well, the letter is insufficient. And I would argue, since he was very credible about his own harm, then the judge at this point should have said, OK, well, I still need additional evidence, even though you're credible about your own claim. And she should have given him, if she wanted a letter that was five pages long with every single detail included, then I believe she should have given the petitioner notice to do that. We could have. But I thought that the position was that the mother was not going to submit additional evidence. So even if there had been the notice that you're requesting, I thought your client's position was, look, this is what my mother told me. This is all she's going to tell me. This is all I know. So what purpose would more notice have had in a circumstance like that? In fact, Your Honor, there is a point in the transcript where I directly asked the petitioner if a letter from the father is requested, could he write it? And he said, I think so. So I think he was perfectly willing to provide additional evidence had he been Not necessarily from the mother, but he believed his father would write the letter. Correct. And the mother, for all we know, is a simple person. And the judge expects her to write this very explicit, detailed letter. But wouldn't that also raise some suspicion? The board finds that they give very little credit to the letter saying the mother is not there to be cross-examined. But at the same time, they penalize the petitioner by saying you didn't submit the letter from your father. Well, again, he would not be there to be cross-examined either. So why are they relying on the absence of this letter when, for the very same reasons, they don't want to give full credit to the mother's letter? Look, I think you have a pretty good argument here. And the question is, what is our standard of review? It seems to come up in a lot of these cases where, I mean, you make a very credible argument, and it's a sympathetic argument, and there's a basis for it. But why don't we just defer in situations like this? Your example, I think, shows that. Of, well, if another letter is submitted, maybe he'll just discount that as well. But isn't that why we, as an appellate court, should just be deferring in a situation like this to the, I guess we're deferring to the BIA, to their finding? What basis, what legal hook do we have to step in here and say, well, we should not be deferring to the BIA in that situation? I completely agree. And most of the cases I believe submit for that very reason is that the panel normally and understandably is differential to the board and the judge because they were there. However, I was the one that handled this case from the start, and I will tell the court that if there were anything within his own claim that the board could hang something on, then I would possibly understand. But his own claim and his testimony was flawless. And I think the standard is that any reasonable fact finder would be compelled, and there was no discrepancies in his testimony whatsoever. So I think this is one of those rare instances. I'm surprised that you're not saying that the agency erred by failing to separate out the non-corroborating issues from the lack of corroboration issues. So under Batare, I thought the agency needed to first figure out whether the testimony was credible on its own and separately talk about the corroboration if they get past that. And here it seems like the agency blurred them together. So I'm a little bit confused about your answer to Judge Nelson. Thank you, Anna. Yes. Thank you for pointing that out. And I believe in my brief, I did make that argument that the board is arguing that there itself, I am arguing, is credible. That the lack of detail, that that finding is not supported by substantial evidence, which would then, you would not need corroborating evidence if he himself is credible. And if I may, could I reserve a minute, Your Honors? I don't know if there's time left. You have two minutes. You can reserve both of them. All right. All right, Mr. Kinney, are you still with us? Yes, Your Honor. All right, great. Just a reminder, I will jump in and give you a verbal two-minute warning. And you may proceed. Thank you very much. You may proceed. May it please the court, I'm Brett Kinney on behalf of the Attorney General. This court should deny the petition for review because under the REAL ID Act, only the most extraordinary circumstances will justify overturning an adverse credibility determination. No such circumstances are present in this case. Instead, the immigration judge and board pointed to specific, cogent reasons for concluding the petitioner was not credible. And the record does not compel- Can I ask you about that? The BIA seemed to give slightly different reasons than the IJ. Would you agree with that? I thought it was interesting that you said the IJ and the BIA both gave reasons, but the BIA is what we're reviewing now, right? Correct, Your Honor. And to the extent that the board relied on or affirmed the reason stated by the immigration judge but added its own rationale, then this court can look to the immigration judge's decision as a guide to the board. So is your position we can go back in this case and look at the immigration judge's rationale to the extent that it goes beyond the BIA here? I would agree, yes. But I would, with the caveat that the board did not explicitly adopt or discuss the immigration judge's findings about implausibilities regarding the timeline of the petitioner's applications to colleges. So I don't think that that's part of the adverse credibility determination before this court. But as to the adverse credibility determination by the board regarding the letter or the statement about his father and the letter from the mother, your position is that we could go back and look both at what the IJ said and what the BIA said, is that correct? Yes, Your Honor. But what's the basis for that? I believe that's under this court's standard of review. It's because it's reviewing the board's decision as the final agency decision. But this court has repeatedly said that when the board relies on statements by the immigration judge, it may look at the immigration judge's decision as a guide to. I mean, that's part of the problem I have with this case, I think. And so maybe I'm just not seeing it right. But it seemed like the IJ gave a couple of different reasons, and then the BIA only relied on one of those reasons. And I'm not sure that, I mean, doesn't that sort of suggest that the BIA didn't view the second reason by the IJ as defensible or not? Not necessarily, Your Honor, because even a single basis may form a ground for an adverse credibility determination. Well, I agree with that. But the question is, are we reviewing only what the BIA said, the single reason there? And if we don't agree with it, that's the end of our inquiry. Or can we go back in and capture what the IAJ said as well? And if the BIA didn't rely on the second reason that the IJ said, but we thought that the you know, that second point might have been enough, I don't understand our case law to allow us to do that. But maybe I'm off base on that. To clarify, I believe the board's decision was sort of based on three reasons, which were also the basis for the immigration judge's determination. They all happen to relate to the petitioner's repeated inability to provide any details or corroboration about what allegedly happened to his father. But as to those three grounds, the lack of detail in his testimony, the lack of detail in the letter from his mother, and his inability to corroborate, those are all relied on and stated by the immigration judge, as well as the board. And each one of those is talking about the second reason being the timeline. It seems like you agree that we can't look at the timeline. Am I right? I would agree that that wasn't part of the board's analysis. And so, therefore, the way I read the board decision is that it didn't say anything about it. And therefore, it wasn't part of the decision on review before this court. But- Can I ask you about the reasons that the BIA did give? Because I don't really understand how they hold up. One of them was that the petitioner didn't ask his mother for more details, but his actual testimony was that he did ask her, but she didn't want to give them because she didn't want to upset him. So how is that a valid basis for finding him not credible? Yes, Your Honor. He testified that his mother was reluctant to give him additional details because she didn't want to upset him. And then he stated that it was simply his personality to accept what he's told. But the agency reasonably concluded that was unpersuasive because it's not a sufficient excuse for failing to meet a statutory burden to provide specific testimony. 8 U.S.C. Section 1158, B1, B2 specifically says that a petitioner has to carry their burden of proof with testimony that's credible. Persuasive. And refers to specific facts. So it was reasonable. But he can only testify about what he knows, right? So there's either implausibility or some problem with his own testimony, which Baderai says we look at first. If it's a question of corroboration, that needed to be considered separately and he needed notice. So it seems like you're maybe blurring them together because if it's a lack of corroboration from what the parents are saying, that's a separate problem. Not necessarily, Your Honor. And as this court explained in Yali Wang v. Sessions, an adverse credibility determination may depend on a lack of corroboration. But in Yali Wang, the testimony itself was found to not be credible, totally apart from the corroboration. So I actually don't think it stands for that principle. I would respectfully disagree. I think it stands for the principle that a lack of corroboration may form part of the basis of an adverse credibility determination. And that's because the statute provides separate subsections. Okay, I didn't mean to be saying otherwise, but if you're going to rely on lack of corroboration, then you needed to give notice and an opportunity to fill the gaps. And I don't really think that notice here was adequate. Two responses, Your Honor. Under Yali Wang, that notice is only necessary if the petitioner is otherwise deemed credible. In this case, as in Yali Wang, the petitioner's case falls down at the first step. Right, but that's what I was asking you about. I don't think the agency's reasons at the first step hold up. Because I don't think, I mean, you jumped to the lack of information he has from the parents, but if he doesn't have information from the parents, then he can't testify to that. That goes to corroboration from the parents, I think, doesn't it? Yes, if this court moves beyond the first round in his testimony that he couldn't provide any detail, which this court has repeatedly stated is a valid basis for an adverse credibility determination. Well, in the detail about things that happened to you, yes. I mean, you need to be able to give detailed testimony about your own experience, but this wasn't his own experience. So what case do you have that tells us someone needs to be able to give detailed testimony about something that they don't know? Two minutes. Your Honor, he proffered the evidence that, and it was part of his claim, as he acknowledged before this court, that what happened to his father was part of his claim. So it was his statutory burden to prove all aspects of his claim, including a fear of treatment of his father was directly pertinent. And moreover, he testified that his father could have given him a letter, but he simply did not ask for it. And to the extent the court is worried about- But that goes to the lack of notice. I mean, there never was a chance. So the IJ is supposed to say what corroboration is missing and give the chance for the petitioner to get it. And I don't see that ever having happened with a letter from the father or anything discussing in particular the experience of the father. And I would point this court to the administrative record during the first hearing on December 3rd, 2015, pages 84 to 85, where the immigration judge specifically told the petitioner to submit, quote, any documents that may be reasonably available, which describe or help support what happened in China. And wasn't that before the incident with the father? That's part of the problem, Your Honor. We don't know because the petitioner never provided any of those details. But your point, I guess the government's point, as I'm listening to it, seems to be that notice wasn't- to the extent notice was required here, it was given up front, and the petitioner should have recognized that because it was part of his claim in chief. The IJ and the BIA are not in the duty of saying, well, you know, you're corroboration is insufficient to support your claim, but we're going to give you more opportunity to come in with more evidence that you should have brought in the first place. Is that the government's position? Yes, Your Honor. And that's consistent with the Real ID Act and this court's decision in Aiden v. Holder. I would also point the court to- How is it consistent with father I? It's consistent in that the petitioner is provided with a notice and an opportunity- or notice that he has to corroborate his claim first by the statute, which specifically, as this court stated in Aiden, imposes a bias toward corroboration. And furthermore, in this specific case, the petitioner was advised to provide anything that supported what happened. And the petitioner's counsel specifically acknowledged, quote, there will be much corroboration required. He also testified that that corroboration was reasonably available and he simply didn't provide it. In father I, we said if the IJ did not provide the applicant notice of the specific corroborative evidence that was required and provide an opportunity to provide it or explain why he can't reasonably obtain it, then we have to remand the IJ to give the applicant that opportunity. I don't see where anywhere here there was a specific statement of what- sorry, a notice of specific corroborative evidence that wasn't here. As the immigration judge noted when the lack of corroboration was discussed at the merits hearing, the immigration judge couldn't have known before the petitioner submitted the evidence what his claim would have been based on. So it seems a bit unfair and plausible to require such from the immigration judge, whereas the specific- when it's the petitioner's burden to submit any documents that would support his claim, and he himself proffered as part of his claim what happened to his father in China. And I see I'm over- Well, you know, and that's okay, counsel. I have just one final question before we turn to your opposing counsel. Baderai was decided in 2016, the IJ's decision was issued in 2017, and the BIA's decision was issued in 2019. Was there any discussion by anyone about Baderai and its requirements as far as you can tell on the record? Not as far as I can tell, Your Honor. And I believe that's because, at least the board specifically cited, you'll be winning recessions. And that's the framework under which the case proceeded. And that was the correct framework, given that this is an adverse credibility determination. And this court's decision in Yali Wing is dispositive or the applicable precedent for this situation. But I take it that the BIA never said, and here's why we're not going to go down the Baderai path. There was no discussion of the case whatsoever. I don't see any citation to it in the board's decision. But again, it's because the board correctly concluded that that framework was not the situation within which it was operating. And if the court has no further questions, we would respectfully request that the petition per review be denied. All right. Thank you very much, counsel. We'll turn to rebuttal. Counsel, you may proceed. Just to address some of the points counsel made, the failure to provide specific detail, just as was pointed out by one of the judges, he can only testify about what he knows. In fact, one could argue that he's not embellishing his testimony by simply making up details about his father's testimony. Let me ask you this. Right now, it was the BIA, well, the IJA, and therefore the BIA relied on a lack of credibility. What if the IJA or perhaps the BIA would have just said, this testimony is so sparse, it just doesn't support the asylum claim? That would have been okay, I take it. It's the fact that they relied upon an adverse credibility determination that makes this difficult. Is that right? Do you mean if they found that the past persecution didn't rise to the level of harm? Well, yeah. I mean, part of the concern I have with the notice argument and why I find it difficult is your client's duty was to show that he actually feared persecution. Part of that was his father's experience, maybe a large part of that. Knowing that, usually you have to come in with all of the facts before you to prove your point. So there's a certain aspect of this that your client just didn't bring enough evidence to bear to support it. He just relied on his own testimony. Go ahead, and a letter from the mom. And he submitted medical records. Well, okay, that's a separate point. I'm just talking about as to the father's imprisonment. So maybe there was enough else in the record. Right. We would have argued that his own persecution is more than enough to rise to the level, even without the father. Even if the father's detention is not considered at all, under Wogey Sessions, we have a continued requirements to report, and they wouldn't allow to practice his religion. And the judge, in fact, found him credible on that aspect and said, I do consider that he's a Christian in the United States, and he had a witness testify on his behalf about his church attendance in Hawaii. So we would have argued that by himself, he doesn't need his father's harm whatsoever. Go ahead and start wrapping up if you could. Yes. And I did look up Yali Wong. That case is egregious and had a number of discrepancies, much, much worse factually than our case. And finally, we would argue that we did submit all reasonably available documents. He did submit medical records, church evidence, a letter from his mother. And one could argue that it would have been duplicative to submit a letter from his father, which goes to the point that there should have been notice if the judge wanted additional letters. And we would ask the court to grant the petition. All right. Thank you very much, counsel. Thank you both for your argument today. This matter is submitted.
judges: Owens, Friedland, Nelson